UNITED STATES of America

v.

Leon DIXON.

Crim. No. 77–00689.

United States District Court,
District of Columbia.

Jan. 24, 1978.

Bernadette Gartrell, Mitchell, Shorter &
Gartrell, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Andrea L.
Harnett, Asst. U. S. Atty., Washington, D.
C., for defendant.

## MEMORANDUM OF FINDINGS AND CONCLUSIONS

OBERDORFER, District Judge.

On November 29, 1977, defendant was indicted by a federal grand jury which charged him with felonious violation of federal and District of Columbia narcotics laws.[1] Defendant had been arrested on September 18, 1977 by District of Columbia police. After the arresting officers stopped defendant's automobile and began searching it for a suspected gun, they found marijuana and several hundred, then unanalyzed, pills concealed in the vehicle. The defendant was arrested, transported to police headquarters, and released from there on a surety bond. On September 20, defendant was charged with D.C.Code violations in an information filed in D.C. Superior Court by the United States Attorney. On about October 12, the laboratory reported that the several hundred pills were LSD. On October 27, the United States Attorney dismissed the D.C. charges without prejudice; on November 29, the instant indictment was returned.

Pointing to the elapse of 72 days from the time of the arrest and seizures until the pending indictment, defendant moves to dismiss pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, et seq. After hearing testimony of some of the arresting officers, a complaining witness and the defendant, and after examination of documentary evidence and consideration of the arguments and representations of counsel, the Court is persuaded that the lapse of time between the September 18 arrest and the November 29 indictment did not violate the Speedy Trial Act as it applies in the District of Columbia because the defendant was not previously charged in a complaint for the offense to be prosecuted in this Court. Local Rule 2–7 ¶ 4(a). See also ¶ 4(c). Therefore, the Motion to Dismiss will be denied.

The defendant also moved to suppress evidence that was seized in connection with the arrest. As will more fully appear from the facts stated below, the search which produced that evidence flowed rationally and appropriately from the original arrest. The Court therefore will confirm its decision from the bench on January 13, 1978 denying that motion.

The sequence of relevant events began at about 1:20 a.m. on September 18, 1977 when several police officers heard a police radio broadcast for "a man with a gun." The radio report was based on a telephone call received at police headquarters from a complainant that a friend of hers had a gun and had threatened her. The first police officer approaching complainant's residence observed an automobile emerge from an adjacent parking lot without lights, turn briefly onto the street and then turn into an alley. This officer followed the automobile, stopped it in the alley and questioned the occupant. By police radio and by questioning, the officer identified the occupant as the person suspected of possessing a gun and making threats. A frisk of the defendant produced no weapons or other evidence. Thereupon, the officer began to search the defendant's automobile and discovered marijuana and some pills in a box there. When the officer discovered the marijuana, he handcuffed defendant, placed him under arrest, and put him in a police cruiser.

Meanwhile, another officer arrived at the complainant's residence where he questioned her. She showed that officer a gun which she identified as belonging to the defendant and which she had been keeping for him. She then accompanied that officer to the place where defendant's automobile had been halted and he was being detained. She advised the officers that defendant owned still another gun which he sometimes carried in his automobile. The officers, while detaining defendant in a police cruiser at the scene of the arrest, continued their search of his automobile. In the course of this continued search, they found no gun, but discovered, concealed behind the instrument panel of the automobile,

---

1. 21 U.S.C. § 841(a) (possession with intent to distribute a controlled substance), 33 D.C.Code § 702 (possession of a dangerous drug), and 33 D.C.Code § 402 (possession of a narcotic drug).

several hundred more pills which they suspected to be LSD. Defendant was then transported, together with the evidence, to police headquarters.

The police prosecution report identified the items recovered from defendant's vehicle at the scene of the arrest as:

5 manilla envelopes containing green weed

(1) empty manilla envelope

6 plastic bags containing green weed

1 plastic bag containing 3 blk capsules, 22 yellow tablets and 940 purple pills

one .32 cal revolver serial # 636373.

The report stated the facts "surrounding the offense and the arrest" as follows: [After the defendant's car was stopped,] [t]he Def. was . . . frisked . . which proved negative. I then searched the front seat of the auto and observed a box under the passenger seat large enough to conceal a revolver. The box was removed at which time I observed a clear plastic bag containing a green weed. The box was then removed and found to contain 6 manilla envelopes, (5 full and 1 empty) containing a green weed. Also 6 plastic bags containing a green weed. Also (1) clear plastic bag containing 3 black capsules, 22 yellow pills. And 11 small plastic bags containing a total of 930 purple pills.

The Def. was placed under arrest and advised of his rights on the scene.

\* \* \* \* \* \*

Def. was then transported to [headquarters] and charged with C.D.W. gun and U.N.A. marijuana (felony). [Defendant's Ex. 1.]

The report further recorded that:

All marijuana and unknown pills placed on 7–D [Seventh Police District] Property Book # 1590 412. .32 caliber revolver placed on 7–D Property Book # 1590 411.

On that same date, September 18, the police made a written request for a laboratory report on what was described in the request as "suspected LSD and unknown pills," and released defendant from headquarters on $2,000 surety bond.

On September 20, defendant was arraigned in D.C. Superior Court on a complaint charging four D.C. offenses: violation of the Uniform Narcotics Act (33 D.C. Code § 402) (possession of a narcotic drug, marijuana); simple assault (22 D.C.Code § 504); carrying a pistol without a license (22 D.C. § 3204); and failure to register a firearm (§ 201(a) of the Firearms Control Regulation Act of 1975). The case was set for trial on November 19, 1977. The D.C. Superior Court information included no charge about the pills which had been sent to the laboratory for testing, as indicated above.

A laboratory report dated October 12, 1977, and received by the police officers on October 19, 1977, identified 847 of the purple tablets as LSD.[2] On October 21, 1977, the United States Attorney's office (which had filed the information) advised defendant's counsel that the United States Attorney intended to indict the defendant in this Court for possession of the LSD and to dismiss the D.C. Superior Court information when the defendant appeared at a hearing previously scheduled for October 27. At that hearing the United States Attorney moved to dismiss the information without prejudice. Thereafter, a grand jury returned a federal indictment on November 29. Between October 27 and November 29, the defendant was free of all restraint.

In support of his contention that the 72 day delay violated the Speedy Trial Act, defendant invokes 18 U.S.C. § 3161(b). That section provides that:

Any . . . indictment charging an individual with the commission of an offense shall be filed within 30 days of the date on which such individual was arrested or served with a summons in connection with such charges.

Defendant contends that the September 18 arrest was "in connection with" the charges

---

2. The report also identified the "green weed" as marijuana, the three black capsules as amphetamines, and the 22 yellow tablets as a non-controlled substance, Biphetamine.

which are the subject of the November 29 indictment: the possession of controlled substances (LSD) with intent to distribute them. The connection between the LSD related arrest and the LSD indictment is evidenced, he argues, by the fact that the arrest was a critical step in a legally and naturally connected process which produced the evidence, which is the basis or subject matter of the November 29 indictment. The search which produced that evidence was conducted by the arresting officers at the scene of the arrest while the defendant was detained. The LSD was found concealed under the dashboard of the automobile in which marijuana had already been found. It was in a merchantable form of package. The police prosecution report reveals the police officers' belief that the pills were LSD even before this conclusion was confirmed by the laboratory. The federal charge was "over his head" for all the time between the September 18 arrest and the November 29 indictment. In short, defendant argues, the fact that the contraband LSD which is the subject of the indictment was seized in the course of the arrest establishes the necessary "connection" between the arrest and the indictment, and commences the running of the permissible period for the indictment.

The United States Attorney opposes defendant's motion on the grounds that the plan adopted by the District Court for the District of Columbia to implement the Act requires not only an arrest in connection with the federal charge, but also the filing of a complaint which charges an offense to be prosecuted in this Court. Local Rule 2–7 which embodies this Court's plan provides in part that:

4 (a) *Time Limits.* If an individual is arrested or served with a summons and the complaint charges an offense to be prosecuted in this court, any indictment or information subsequently filed in con-

nection with such charge shall be filed within the following time limits:

\* \* \* \* \* \*

(3) If the arrest occurs on or after July 1, 1977, but before July 1, 1978, within 40 days of arrest or service.

The plain language of that rule seems to dispose of this matter and require denial of the motion. The defendant here was not held on a complaint charging an offense to be prosecuted in this Court. He was released after arrest on a surety bond, and was never charged on a federal complaint; the information filed in D.C. Superior Court conspicuously omitted any charge about the pills.

The defendant makes an impressive showing that, although the police acted swiftly to seek a laboratory report on September 18 and to submit the results to the United States Attorney on or before October 21 (two days after the police had received it on October 19), the United States Attorney unnecessarily delayed dismissal of the D.C. charges until a hearing date set for October 27,[3] and then allowed the matter to proceed according to United States Attorney "routine" until the case was presented to the grand jury on November 29, 1977.[4]

Finally, the Court notes the possibility that the ambiguity in the Local Rule, where the United States Attorney is the prosecutor of felony cases in the Superior Court and in this Court, could theoretically be exploited to permit even more extensive delay of the time between an arrest at which evidence of federal crime is seized and the filing of a federal complaint or indictment. This is not to suggest that there was any deliberate delay, any forum shopping, or any other invidious action by the police or by the United States Attorney in this case. But opportunity afforded by the Local Rule for the single prosecutor to

---

3. Defendant makes no claim that there was "unnecessary delay" between arrest and complaint within the meaning of Rule 5 of Fed.R. Crim.Proc.

4. The United States Attorney suggests that this "routine" was followed because there might

have been more important cases requiring priority attention. This suggestion indicates that a more alert response to the passage of time by filing either a federal complaint or an accelerated indictment would have been quite feasible.

choose between two courts enhances temptations to delay and to forum shop.

 Nevertheless, in the circumstances, the Court is not persuaded that the Act itself as construed in the Local Rule was violated by the delay here. The emphasis placed by the United States Attorney and the Local Rule on the filing of the complaint as the critical element is corroborated by the language of 18 U.S.C. § 3162 relating to sanctions for violation of the Act. That section makes no reference to arrest, and refers to the filing of a complaint charging an offense as the critical moment for commencement of the limited time available for indictment.

In addition, the Act gave each District Court substantial discretion in adopting the required implementing plan. *See* 18 U.S.C. § 3165. And the needs to accommodate the Act to the peculiar federal/local relationships in the District of Columbia, recognized by Congress,[5] give special weight to this Court's Local Rule interpreting the Act.

■ Furthermore, Section 3161(h)(6) of the Act and ¶ 4(b) of the Local Rule may be construed to permit the United States Attorney to toll the Act by dismissing a *federal* indictment before the expiration of the 40 day limit, and to postpone a new indictment for as long as permitted by the statute of limitations or by Rule 48(b) of the Federal Rule of Criminal Procedure. Thus, if a complaint making a federal charge had been filed September 18 and had been dismissed 39 days later on October 27, a subsequent indictment returned on November 29 (or on any date open under the statute of limitations) would not literally violate the Act. The United States Attorney, commendably sensitive to the injustice of such a construction of the statute and the rule, does not rely upon it, and neither does the Court. But the existence of this gap in the statute argues against making a stricter rule for a case originally begun by a complaint in the Superior Court than would apply to a case commenced, discontinued and reinstated here.

Finally, the interim provisions of the Act give the Court broad discretion in determining whether to dismiss the indictment because, as a practical fact, the sanctions provisions are not yet effective. *Compare* 18 U.S.C. § 3163(c) *with* 18 U.S.C. § 3162. Even if the sanctions were now effective, it would not be appropriate to dismiss this indictment, either with prejudice or without it. The defendant has not been prejudiced by delay and none of the other circumstances justifying dismissal with prejudice are present here. Dismissal without prejudice so relatively soon after the offense would be an exercise in futility. Neither the Act, Federal Rule 48(b), nor the Local Rule requires dismissal, and the Local Rule 2–7 plainly proscribes it. Accordingly, an order will be entered which DENIES the Motion to Dismiss.

---

5. H.Rep.No.93–1508, 93d Cong., 2d Sess. (1974) *reprinted in* U.S.Code Cong. & Admin.News pp. 7401, 7439–7441.